IN THE UNITED STATES DISTRICT COURT
FOR THE DISTRICT OF DELAWARE

| | | |
|---|---|---|
| ENHANCED SECURITY RESEARCH, LLC, | : | |
| | : | |
| Plaintiff, | : | |
| | : | |
| v. | : | C.A. No. 09-871-JJF |
| | : | |
| JUNIPER NETWORKS, INC., | : | |
| | : | |
| Defendant. | : | |

Martin R. Lueck, Esquire; Sara A. Poulos, Esquire; Cole M.
Fauver, Esquire; Julia Dayton Klein, Esquire; and Brenda L. Joly,
Esquire of ROBINS, KAPLAN, MILLER & CIRESI LLP, Minneapolis,
Minnesota.
Steven J. Balick, Esquire, and Tiffany Geyer London, Esquire of
ASHBY & GEDDES, Wilmington, Delaware.

Attorneys for Plaintiff Enhanced Security Research, LLC.

Morgan Chu, Esquire, and Jonathan S. Kagan, Esquire of IRELL &
MANELLA LLP, Los Angeles, California.
David C. McPhie, Esquire; Rebecca Clifford, Esquire; and Laura
Evan, Esquire of IRELL & MANELLA LLP, Newport Beach, California.
Jack B. Blumenfeld, Esquire of MORRIS, NICHOLS, ARSHT & TUNNELL
LLP, Wilmington, Delaware.

Attorneys for Defendant Juniper Networks, Inc.

**MEMORANDUM OPINION**

July **20** , 2010
Wilmington, Delaware

Farnan, District Judge.

Presently before the Court is a Motion To Dismiss For Lack Of Standing (D.I. 19) filed by Defendant Juniper Networks, Inc. For the reasons discussed, the Motion will be granted.

## I. Background

Plaintiff Enhanced Security Research, LLC ("Plaintiff") initiated the present patent infringement action against Defendant Juniper Networks, Inc. ("Defendant") in the United States District Court for the Eastern District of Texas, Marshall Division on May 18, 2009. (D.I. 1.) Plaintiff alleges that Defendant directly and contributorily infringed U.S. Patent Nos. 6,119,236 and 6,304,975 BI (collectively, the "patents-in-suit"). (Id. ¶¶ 5, 9.) Plaintiff previously brought a patent infringement action against Defendant in the Eastern District of Texas, but that case was dismissed without prejudice on July 17, 2009 after Plaintiff moved for dismissal pursuant to Rule 41(a)(2) of the Federal Rules of Civil Procedure due to doubts about its standing to sue. (D.I. 19, Evan Decl., Exs. A, B.) Defendant filed the pending Motion To Dismiss in the Eastern District of Texas on July 27, 2009. On October 23, 2009, Defendant's Motion To Transfer Venue (D.I. 18) was granted, and this action was transferred to the District of Delaware. (D.I. 49.)

Peter Shipley ("Mr. Shipley") is the sole named inventor of the patents-in-suit. (D.I. 26, Joly Decl., Exs. A, B.) In 1996,

Mr. Shipley assigned rights to the patents-in-suit to Network Security Associates, a corporation wholly owned and operated by Mr. Shipley. (D.I. 26, at 2; Joly Decl., Ex. C (Shipley Decl. ¶¶ 1-2).) This assignment was apparently never recorded with the U.S. Patent and Trademark Office ("PTO") and, according to Plaintiff, was rescinded through subsequent conduct pursuant to California law. (D.I. 26, at 2; Shipley Decl. ¶ 4.)

In July 2007, Mr. Shipley assigned all rights, title and interest in the patents-in-suit to Plaintiff, a limited liability company he formed. (D.I. 26, at 2; Shipley Decl. ¶ 7.) On October 16, 2008, Altitude Capital Partners, LP, a litigation finance/ investment firm, formed Security Research Holdings LLC ("Security Research Holdings") as a Delaware limited liability company. (D.I. 19, at 4; Evans Decl., Ex. F.) On January 20, 2009, Plaintiff entered into an agreement with Security Research Holdings entitled "Purchase Agreement." (D.I. 55, Ex. A.) In May 2009, because of doubts about whether the 1996 assignment had been rendered inoperable, Network Security Associates and Mr. Shipley executed a confirmatory agreement assigning all rights, title and interest in the patents-in-suit to Plaintiff. (D.I. 26, at 3; Shipley Decl. ¶ 10.) The 2007 and 2009 assignments were recorded with the PTO. (Joly Decl., Exs. E,F.)

## II. Parties' Contentions

By its Motion, Defendant contends that Plaintiff sold all

2

substantial rights to the patents-in-suit to Security Research
Holdings, and therefore, Plaintiff lacks standing to sue. (D.I.
19, at 8.) Specifically, Defendant contends that as a result of
the Purchase Agreement, Security Research Holdings holds the
following substantial rights to the patents-in-suit: (1) the
exclusive right to sue; (2) the exclusive right to transfer title
or assign the patents-in-suit; and (3) the exclusive right to
exclude others from practicing the patents-in-suit. (Id. at 10-
11.) Finally, Defendant argues that even if Plaintiff retained
legal title to the patents-in-suit, it has not retained any
significant rights such that it has the ability to bring suit for
patent infringement. (Id. at 13.)

Plaintiff responds that only the patentee, which includes
the patentee to whom the patent was issued and successors in
interest, have the right to bring a patent infringement action.
(D.I. 26, at 6.) Plaintiff contends that legal title to a patent
can only be transferred through an assignment, and that title is
not transferred through a license, which is a conveyance of less
than all rights to a patent. (Id.) Plaintiff maintains that it
is the assignee of the patents-in-suit, and that the Purchase
Agreement was not an assignment to Security Research Holdings.
(Id. at 8-11.) Accordingly, Plaintiff contends that it has
standing because the Purchase Agreement did not transfer legal
title or all substantial rights to the patents-in-suit. (Id.)

Specifically, Plaintiff contends that the Purchase Agreement did
not grant Security Research Holdings the right to freely transfer
its rights to the patents-in-suit, and that the entire agreement
can be terminated upon the mutual written agreement of Plaintiff
and Security Research Holdings. (Id. at 11-12.) Plaintiff
argues that, at most, the Purchase Agreement operated as a power
of attorney authorizing Security Research Holdings to take
certain actions on behalf of Plaintiff. (Id. at 12-14.)

## III. **Legal Standard**

Pursuant to Rule 12(b)(1) of the Federal Rules of Civil
Procedure, the Court may dismiss a complaint for lack of subject
matter jurisdiction. Fed. R. Civ. P. 12(b)(1). Motions brought
under Rule 12(b)(1) may present either a facial challenge or a
factual challenge to the Court's subject matter jurisdiction.
Gould Elecs. Inc. v. U.S., 220 F.3d 169, 176 (3d Cir.
2000)(citing Mortensen v. First Fed. Sav. and Loan Ass'n, 549
F.2d 884, 891 (3d Cir. 1977)). If the motion presents a factual
attack, the Court may consider evidence outside the pleadings,
id., including affidavits, depositions, and testimony, to resolve
factual issues bearing on jurisdiction. Gotha v. U.S., 115 F.3d
176, 179 (3d Cir. 1997). Moreover, in reviewing a factual
challenge to the court's subject matter jurisdiction, the
presumption of truthfulness does not attach to the allegations of
the complaint. Mortensen, 549 F.2d at 891. If the motion

presents a facial attack, the Court may only consider the
allegations of the complaint, and documents referenced therein,
in the light most favorable to the plaintiff.  Gould Elecs., 220
F.3d at 176.  The present Motions To Dismiss will be treated as
factual attacks.

**IV.  Discussion**

As in all federal actions, a plaintiff must have standing to
sue before a patent infringement claim can be brought.  Sicom
Sys. Ltd. v. Agilent Techs., Inc., 427 F.3d 971, 975-76 (Fed.
Cir. 2005).  To establish standing in accordance with Article III
of the Constitution, the party bringing the action must
demonstrate (1) an injury in fact (an invasion of a legally
protected interest which is concrete and particularized and
actual or imminent); (2) a causal connection between the
defendant's action and the injury (that the injury is fairly
traceable to the defendant's alleged unlawful conduct); and (3)
redressability (that the injury is likely to be redressed by the
relief requested).  Lujan v. Defenders of Wildlife, 504 U.S. 555,
560-61 (1992).  In the context of patent infringement actions
specifically, standing is derived from the Patent Act, which
permits a "patentee" to bring a "civil action for infringement of
his patent."  35 U.S.C. § 281.  A "patentee" includes the
patentee to whom a patent is issued and the "successors in title
to the patentee."  Id. § 100(d).  The Patent Act further creates

5

the legal interest in a patent: the right to exclude others from making, using, selling, or offering to sell the patented invention. Morrow v. Microsoft Corp., 499 F.3d 1332, 1339 (Fed. Cir. 2007)(citing 35 U.S.C. §§ 154, 271). Thus, the party holding the exclusionary rights to a patent suffers the legal injury in fact and has standing to sue. Id.

In turn, the Federal Circuit has identified three general categories of plaintiffs when analyzing the constitutional standing issue in patent infringement actions: (1) those that can sue in their own name; (2) those that can sue as long as the patent owner is also joined in the suit; and (3) those that cannot even participate as a party to an infringement suit. Id. at 1339-41. Patentees and assignees who hold "all substantial rights" to the patent fall into the first category of plaintiffs and have standing to bring a suit for infringement in their own name alone. Id. at 1339-40. The second category of plaintiffs includes parties who hold exclusionary rights and interests created by the patent statutes, but not all substantial rights to the patents. Id. at 1340. The third category of plaintiffs includes those that hold less than all substantial rights to the patents and lack exclusionary rights. Id. at 1340-41. The burden of establishing standing rests on the party bringing suit. Sicom, 427 F.3d at 976.

The issue before the Court is whether Plaintiff falls into
the first category and has standing to bring suit on its own,
without Security Research Holdings.  In order to answer this
question, the Court will consider what rights Plaintiff retained
and what rights it transferred to Security Research Holdings
under the terms of the Purchase Agreement, as well as the
intention of the parties as demonstrated by the Purchase
Agreement as a whole.[1]  See Prima Tek II, L.L.C. v. A-Roo Co.,
222 F.3d 1372, 1378 (Fed. Cir. 2000)("To determine whether a
license agreement has conveyed all substantial rights in a
patent, and is thus tantamount to an assignment, we must
ascertain the intention of the parties and examine the substance
of what was granted.  In doing so, it is helpful to look at what
rights were retained by the grantor.")(internal citations
omitted).

The Federal Circuit has addressed the issue of standing to
sue for patent infringement numerous times in recent years.  See
e.g., Propat Int'l Corp. v. Rpost, Inc., 473 F.3d 1187 (Fed. Cir.
2007); Aspex Eyewear, Inc. v. Miracle Optics, Inc., 434 F.3d 1336
(Fed. Cir. 2006); Intellectual Prop. Dev., Inc. v. TCI
Cablevision of Cal., Inc., 248 F.3d 1333 (Fed. Cir. 2001);
Speedplay, Inc. v. Bebop, Inc., 211 F.3d 1245 (Fed. Cir. 2000);

---

[1] It does not appear that Defendant challenges the validity
of the 2007 assignment of patent rights from Mr. Shipley to
Plaintiff.

<u>Abbott Labs. v. Diamedix Corp.</u>, 47 F.3d 1128 (Fed. Cir. 1995);
<u>Vaupel Textilmascginen KG v. Meccanica Euro Italia SPA</u>, 944 F.2d
870 (Fed. Cir. 1991).  One of the most important rights in the
standing analysis is the exclusive right to sue for patent
infringement because this is the means by which a party exercises
the right to exclude others from making, using, and selling the
claimed invention.  <u>Sicom</u>, 427 F.3d at 979 (citing <u>Vaupel</u>, 944
F.2d at 875).  Additionally, the Federal Circuit has looked to
whether the grantor retains the right to make and use the
patented product, <u>Abbott Labs.</u>, 47 F.3d at 1132, as well as the
ability to freely grant sublicenses to other parties.  <u>See</u> <u>Prima
Tek II</u>, 222 F.3d at 1380; <u>Textile Prods., Inc. v. Mead Corp.</u>, 134
F.3d 1481, 1485 (Fed. Cir. 1998).  Whether a party may settle
litigation, assign its interests in the patents, and enter into
contracts without reservation are also relevant considerations.
<u>See</u> <u>Sicom</u>, 427 F.3d at 979-80.

The Court concludes that the Purchase Agreement provided
Security Research Holdings with all substantial rights to the
patents-in-suit such that Plaintiff lacks constitutional standing
to bring this action on its own.  Under the terms of the Purchase
Agreement, Plaintiff retained title to the patents-in-suit and
possessed the "rights to use, exploit, enforce, [the patents-in-
suit]."  (Joly Decl., Ex. G, Purchase Agreement § 3.12(a),©.)
Despite this language, the Purchase Agreement is clear that

8

control over the exclusionary rights was given to Security
Research Holdings. Section 2.3© provides that Security Research
Holdings "shall have the *exclusive right to: initiate*, maintain,
manage, *resolve*, conclude and *settle* all arrangements and
activities in connection with *any and all licensing or litigation
or enforcement efforts* and/or Proceedings . . . relating to any
of [Plaintiff]'s rights in and to any of the Patents." (Id. §
2.3© (emphasis added).) Plaintiff is prohibited from making any
decision with respect to the assertion of its patent rights, the
conduct of litigation relating to the patents-in-suit, or the
settlement or resolution of such litigation without the prior
written consent of Security Research Holdings. (Id. § 5.4®,
(s).) Plaintiff is also prohibited from contacting any potential
infringers without the prior consent of Security Research
Holdings. (Id. § 3.18©.) Moreover, Plaintiff "shall take all
actions to give effect to [Security Research Holding]'s
decisions." (Id. § 2.3©.) To the extent Plaintiff retains
certain interests and obligations with regard to the patents-in-
suit, they are circumscribed by the Purchase Agreement. While
Plaintiff may be obligated for the legal fees and expenses
related to enforcing the patents-in-suit (id. § 2.3(a),(b)),
Security Research Holdings is the party with the authority to
enter into legal fee arrangements and to make all decisions with
respect to engaging counsel (id. § 2.3©). In addition, Plaintiff

9

may receive consideration in connection with enforcement actions and licensing and litigation efforts for the patents-in-suit, but Plaintiff must give notice of such receipts to Security Research Holdings and must compute payments owed to Security Research Holdings.  (Id. §§ 5.6, 5.16, 5.17.)

The Court is not persuaded by Plaintiff's contention that Security Research Holdings lacks substantial rights because it cannot freely transfer its rights under the Purchase Agreement. Section 7.7 provides that the Purchase Agreement, and the rights and obligations under the Purchase Agreement, may not be transferred or assigned by either Plaintiff or Security Research Holdings without the prior written consent of the other party. (Id. § 7.7.)  However, Plaintiff's transferability rights are more limited than Security Research Holdings'.  Whereas Plaintiff cannot assign, transfer, or license its rights to the patents-in-suit without the prior written consent of Security Research Holdings (id. § 5.4(k)), Security Research Holdings may transfer or assign the Purchase Agreement or its rights under the Purchase Agreement to "any of its Affiliates or to a Person that acquires the Gross Proceeds" without the prior consent of Plaintiff (id. § 7.7).

Although Plaintiff appears to have retained legal title to the patents-in-suit, as well as the ability to exploit the patents-in-suit, the Court concludes that the Purchase Agreement

10

nevertheless transferred "all substantial rights" to Security
Research Holdings. Under the Purchase Agreement, Plaintiff lacks
authority to make decisions concerning licensing and assignments,
whether to initiate enforcement proceedings and/or settlement
discussions, how to conduct litigation, and the approval of any
settlements. Because Plaintiff lacked the requisite legal
interest in the patents-in-suit at the time it brought this
action, it has not suffered any cognizable injury and does not
have Article III standing.

**V.   Conclusion**

For the reasons discussed, Defendant's Motions To Dismiss
will be granted.

An appropriate Order will be entered.